OPINION
{¶ 1} Defendant-appellant, Richard H. Horton, appeals from a judgment of the Franklin County Court of Common Pleas that convicted him of aggravated burglary, aggravated robbery, felonious assault, and having a weapon under disability. For the reasons that follow, we affirm the trial court's judgment.
 {¶ 2} According to the evidence of plaintiff-appellee, State of Ohio ("the state"), on October 8, 2004, Richard McClanahan cashed a paycheck. After cashing his paycheck, McClanahan went to a store to buy beer and stopped by a public telephone to *Page 2 
place a call. Observing that McClanahan had a pocketful of money, defendant asked McClanahan if he could borrow $20. McClanahan refused defendant's request. McClanahan also refused defendant's request to use the public telephone ahead of McClanahan.
 {¶ 3} The next morning, defendant, who had a gun with him, forcibly entered Richard McClanahan and Rhonda Curry's home in Columbus, and demanded money. Upon forcibly entering the home, defendant shot McClanahan in the leg, and struck McClanahan in the head with the gun. In addition, defendant threatened McClanahan and Curry and prevented them from leaving the house. Defendant also kicked McClanahan, dragged McClanahan around the house, and later robbed McClanahan of $40.
 {¶ 4} After defendant fled the house, Curry and her sister, who was in another room at the time of the robbery, brought McClanahan to McClanahan's sister's house so that emergency medical personnel and police officers could be summoned. Because McClanahan and Curry did not have a telephone in their house, Curry and her sister were unable to place an emergency call from their home. McClanahan later underwent several surgeries to repair damage to his leg.
 {¶ 5} By indictment filed on January 7, 2005, defendant was charged with one count of aggravated burglary with firearm specifications; two counts of aggravated robbery with firearm specifications; four counts of robbery with firearm specifications; two counts of kidnapping with firearm specifications; one count of felonious assault with firearm specifications; and one count of having a weapon while under disability. Defendant pled not guilty to these charges. *Page 3 
 {¶ 6} Claiming that a pre-trial identification was secured by unnecessarily suggestive means thereby depriving him of due process rights under the United States and Ohio Constitutions, defendant moved to suppress identification evidence by the state's witnesses. The trial court denied this motion.
 {¶ 7} Waiving his right to a jury trial as to the charge of having a weapon under disability, defendant chose to have this charge tried by the court. However, as to the remaining charges, defendant elected to have these charges tried by a jury. During the trial, four counts of robbery were dismissed.
 {¶ 8} After deliberating, a jury returned verdicts of guilty as to all charges before it. The trial court also found defendant guilty of having a weapon under disability. Finding that defendant's conduct as to the aggravated robbery charges and the kidnapping charges were allied offenses of similar import, the trial court entered no convictions as to the kidnapping charges when the trial court imposed a 23-year prison sentence.
 {¶ 9} From the trial court's amended judgment, which we construe as a nunc pro tunc judgment, defendant appeals, and the state cross-appeals. See, generally, Crim.R. 36 (providing that clerical mistakes in judgments arising from oversight or omission may be corrected by the court at any time); see, also, State v. Brown (2000),136 Ohio App.3d 816, 819-820 (discussing function of nunc pro tunc entry).
 {¶ 10} Since the state filed notice of a cross-appeal, in its responsive brief, the state stated a wish to withdraw its cross-appeal. Although the state has not formally moved to withdraw its cross-appeal, we construe the state's statement seeking withdrawal of its cross-appeal as a motion seeking dismissal of the cross-appeal.
 {¶ 11} Defendant assigns seven errors for our consideration: *Page 4 
 ASSIGNMENT OF ERROR NO. I:
 THE REPRESENTATION PROVIDED TO RICHARD HORTON FELL FAR BELOW THE PREVAILING NORMS FOR COUNSEL IN A CRIMINAL CASE, WAS UNREASONABLE, AND AFFECTED THE OUTCOME IN VIOLATION OF THE FIFTH, SIXTH, EIGHTH AND FOURTEENTH AMENDMENTS AS WELL AS ART. I, § 2, 9, 10, AND 16 OF THE OHIO CONSTITUTION.
 ASSIGNMENT OF ERROR NO. II:
 THE ADMISSION OF DETECTIVE WALKER'S TESTIMONY REGARDING THE PHOTO ARRAY EVIDENCE PROCEDURE AND THE VICTIM'S STATEMENTS IN REGARDS TO THE PHOTO ARRAY PROCEDURE VIOLATED RICHARD HORTON'S RIGHT TO DUE PROCESS, A FAIR TRIAL, AND THE EFFECTIVE ASSISTANCE OF COUNSEL AS GUARANTEED BY THE FIFTH, SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE I, §§ 2, 10 16
OF THE OHIO CONSTITUTION. ITS ADMISSION ALSO VIOLATED THE OHIO EVIDENCE RULES. EVIDENCE RULES. [sic.]
 ASSIGNMENT OF ERROR NO. III:
 THE TRIAL COURT ERRED IN FAILING TO SUPPRESS THE PHOTO ARRAY EVIDENCE BECAUSE IT WAS AN IMPERMISSIBLY SUGGESTIVE IDENTIFICATION THAT LACKED SUFFICIENT INDICIA OF RELIABILITY THEREBY VIOLATING RICHARD HORTON'S RIGHTS AS GUARANTEED BY THE FIFTH, SIXTH AND FOURTEENTH AMENDMENTS TO THE U.S. FEDERAL CONSTITUTION AND ARTICLE I, § 2, 10, AND 16 OF THE OHIO CONSTITUTION.
 ASSIGNMENT OF ERROR NO. IV:
 A TRIAL COURT MAY NOT SENTENCE A DEFENDANT TO NON-MINIMUM AND CONSECUTIVE SENTENCES WITHOUT VIOLATING A DEFENDANT'S CONSTITUTIONAL RIGHTS AS GUARANTEED BY THE FIFTH, SIXTH, EIGHTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE I, § 10 AND 16 OF THE OHIO CONSTITUTION. THE DECISION RENDERED BY THE SUPREME COURT OF OHIO IN *Page 5 STATE V. FOSTER (2006), 109 OHIO ST.3D 1, IS INCOMPATIBLE WITH THE CONTROLLING PRECEDENT OF THE UNITED STATES SUPREME COURT AND MUST BE REJECTED.
 ASSIGNMENT OF ERROR NO. V:
 THE TRIAL COURT VIOLATED HORTON'S RIGHTS UNDER THE EX POST FACTO CLAUSE OF THE FEDERAL CONSTITUTION BY SENTENCING APPELLANT TO A TERM OF INCARCERATION WHICH EXCEEDED THE MAXIMUM PENALTY AVAILABLE UNDER THE STATUTORY FRAMEWORK AT THE TIME OF THE OFFENSE. THE DECISION RENDERED BY THE SUPREME COURT OF OHIO IN STATE V. FOSTER (2006), 109 OHIO ST.3D 1, WHICH PURPORTS TO AUTHORIZE THE SENTENCE RENDERED AGAINST RICHARD HORTON, IS INCOMPATIBLE WITH THE CONTROLLING PRECEDENT OF THE UNITED STATES SUPREME COURT AND MUST BE REJECTED.
 ASSIGNMENT OF ERROR NO. VI:
 THE TRIAL COURT VIOLATED APPELLANT'S RIGHTS UNDER THE FOURTEENTH AMENDMENT TO THE FEDERAL CONSTITUTION BY SENTENCING APPELLANT PURSUANT TO THE DECISION RENDERED BY THE SUPREME COURT OF OHIO IN STATE V. FOSTER (2006), 109 OHIO ST.3D 1, BECAUSE THE HOLDING OF FOSTER IS INVALID UNDER ROGERS V. TENNESSEE (2001), 532 U.S. 451.
 ASSIGNMENT OF ERROR NO. VII:
 THE RULE OF LENITY REQUIRES THE IMPOSITION OF MINIMUM AND CONCURRENT SENTENCES, AND THE RULING OF THE TRIAL COURT TO THE CONTRARY MUST BE REVERSED.
 {¶ 12} We shall begin our analysis by first addressing defendant's third assignment of error.
 {¶ 13} By his third assignment of error, defendant asserts that the trial court erred under both the United States and Ohio Constitutions by failing to suppress a photo array *Page 6 
that was used to identify defendant because this array was impermissibly suggestive and lacked sufficient indicia of reliability.
 {¶ 14} "Appellate review of a motion to suppress presents a mixed question of law and fact." State v. Bumside, 100 Ohio St.3d 152,2003-Ohio-5372, at ¶ 8; see, also, State v. Roberts, 110 Ohio St.3d 71,2006-Ohio-3665, at ¶ 100, reconsideration denied, 111 Ohio St.3d 1418,2006-Ohio-5083; State v. Carrocce, Franklin App. No. 06AP-101,2006-Ohio-6376, at ¶ 26 (Brown, J., dissenting). "When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses." Bumside, at ¶ 8, citingState v. Mills (1992), 62 Ohio St.3d 357, 366, rehearing denied,63 Ohio St.3d 1406, certiorari denied, 505 U.S. 1227, 112 S.Ct. 3048; see, also,Roberts, at ¶ 100; Carrocce, at ¶ 26. As a consequence, "an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence," Bumside, at ¶ 8, citingState v. Fanning (1982), 1 Ohio St.3d 19, and "an appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard."Bumside, at ¶ 8, citing State v. McNamara (1997), 124 Ohio App.3d 706; see, also, Roberts, at ¶ 100; Carrocce, at ¶ 26.
 {¶ 15} "The due process clauses of the Fifth and Fourteenth Amendments to the United States Constitution prohibit the admission of unreliable identification testimony derived from suggestive identifications procedures." State v. Brust (May 28, 2000), Franklin App. No. 99AP-509 (Tyack, J., dissenting in part), dismissed, appeal not allowed,89 Ohio St.3d 1465, citing Stovall v. Denno (1967), 388 U.S. 293, 87 S.Ct. 1967. See, also, Sorrell v. Thevenir (1994), 69 Ohio St.3d 415, 422-423, citing Direct Plumbing *Page 7 Supply Co. v. Dayton (1941), 138 Ohio St. 540, 544 (stating that the "[t]he `due course of law' provision [in Section 16, Article I, of the Ohio Constitution] is the equivalent of the `due process of law' provision in the Fourteenth Amendment to the United States Constitution"); Peebles v. Clement (1980), 63 Ohio St.2d 314, 317.
 {¶ 16} "Before identification testimony is suppressed, the trial court must find that the procedure employed was so impermissibly suggestive as to give rise to a very substantial likelihood of misidentification."Brust, supra, citing State v. Blackwell (1984), 16 Ohio App.3d 100, 103, citing Neil v. Biggers (1972), 409 U.S. 188, 198, 93 S.Ct. 375; see, also, State v. Lee, Franklin App. No. 06AP-226, 2007-Ohio-1594, at ¶ 13; State v. Smith, Hamilton App. No. C-010517, 2002-Ohio-2886, at ¶ 14, appeal not allowed, 96 Ohio St.3d 1525, 2002-Ohio-5099.
 {¶ 17} In Lee, this court explained:
 * * The defendant has the burden to show that the identification procedure was unduly suggestive. * * * If the defendant meets that burden, the court must then consider whether the identification, viewed under the totality of the circumstances, is reliable despite its suggestive character.
 * * * If the pretrial confrontation procedure was not unduly suggestive, any remaining questions as to reliability go to the weight of the identification, not its admissibility, and no further inquiry into the reliability of the identification is required. * * *
Id. at ¶ 13 (citations omitted); see, also, United States v. Hill
(C.A.6, 1992), 967 F.2d 226, 230-231, certiorari denied, 506 U.S. 964,113 S.Ct. 438.
 {¶ 18} "Even if the identification procedure utilized is suggestive, as long as the identification itself is otherwise reliable the identification is admissible." Brust, supra, citing Biggers, at 199. Furthermore, "even assuming that the procedure used was impermissibly suggestive, `[u]nnecessary suggestiveness alone * * * does not require *Page 8 
exclusion of a photographic identification. Rather, the identification process must be so unreliable under the totality of the circumstances as to create a substantial likelihood of irreparable misidentification before the identification will be excluded.'" Brust, supra, quotingState v. Biddings (Dec. 6, 1990), Franklin App. No. 89AP-822, dismissed by, 59 Ohio St.3d 713. See, also, State v. Berry (June 29, 1999), Franklin App. No. 97AP-964, dismissed, appeal not allowed by,87 Ohio St.3d 1430, and motion for delayed appeal denied by (2000),88 Ohio St.3d 1436.
 {¶ 19} In Brust, this court stated:
 To determine whether, under the totality of the circumstances, an identification was reliable, even though the confrontation procedure was suggestive, the following factors should be considered: "The opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation."
Id., quoting Neil, at 199. See, also, State v. Davis (1996),76 Ohio St.3d 107, 113, reconsideration denied, 76 Ohio St.3d 1479, citingState v. Waddy (1992), 63 Ohio St.3d 424, 439, superseded by state constitutional amendment on other grounds in State v. Smith (1997),80 Ohio St.3d 89, 103, citing Neil, at 199-200.
 {¶ 20} "[N]o due process violation will be found where an identification does not stem from an impermissibly suggestive confrontation, but is instead the result of observations at the time of the crime." Davis, at 112, citing Coleman v. Alabama (1970), 399 U.S. 1,5-6, 90 S.Ct. 1999.
 {¶ 21} Defendant asserts that the photo array was impermissibly suggestive because, except for defendant's photograph, no other photograph in the array portrayed *Page 9 
an African-American male of light complexion. Defendant further asserts that the reliability of the identification was questionable because the photo array was submitted to the victims for their review almost two months after defendant allegedly robbed the victims.
 {¶ 22} "A defendant in a lineup need not be surrounded by people nearly identical in appearance." Davis, at 112, citing New York v.Chipp (1990), 75 N.Y.2d 327, 336, 553 N.Y.S.2d 72, 77, 552 N.E.2d 608,613, certiorari denied, 498 U.S. 833, 111 S.Ct. 99. "`[E]ven * * * significant dissimilarities of appearance or dress' will not necessarily deny due process." Davis, at 112, citing 1 LaFave Israel, Criminal Procedure (1984) 587, Section 7.4. See, also, State v. Murphy (2001),91 Ohio St.3d 516, 534, citing Davis, at 112, reconsideration denied,92 Ohio St.3d 1451, certiorari denied (2002), 534 U.S. 1116, 122 S.Ct. 926.
 {¶ 23} Here, the trial court concluded that the photo array of six African-American males, which was computer-generated based upon parameters, such as race, age, length of hair, and facial hair, and which was separately shown to both victims, was comprised in a totally random manner. (Tr. 16-17; 31.) Although the trial court found some variation among the photographs, (Tr. 32), the trial court concluded that none of the variations was "suggestive." (Tr. 33.) Our review of the array reveals that the five other photographs are all reasonably close to defendant's photograph in appearance, showing no significant variations in hair length, facial hair, age, features, dress, or complexion. Accordingly, we find that the trial court's factual determination is supported by competent, credible evidence. Absent any significant variation in complexion, defendant's claim that a difference in complexion among the photographs was impermissibly suggestive is *Page 10 
unconvincing. See, e.g., Murphy, at 534; see, also, State v. Wills
(1997), 120 Ohio App.3d 320, 325, dismissed, appeal not allowed by,80 Ohio St.3d 1409, quoting Jarrett v. Headley (C.A.2, 1986), 802 F.2d 34,41 (stating that "the test [for suggestiveness] is `whether the picture of the accused, matching descriptions given by the witness, so stood out from all of the photographs as to suggest to an identifying witness that [that person] was more likely to be the culprit'").
 {¶ 24} Also, when a police detective separately and independently showed the photo array to the victims, the detective reviewed a form instructing the victims that the photos were arranged in no particular order of importance; defendant might or might not be included in the photo array; and neither victim was required to select any photo. (Tr. 18-21.) Under such facts and circumstances, we cannot conclude that the procedure used by the police detective was impermissibly suggestive.
 {¶ 25} Because neither the photo array itself nor the procedure used by the police detective was impermissibly suggestive, for purposes of our review of the trial court's denial of defendant's suppression motion, we need not address defendant's claims that the identification of defendant from the photo array was unreliable. See Lee, at ¶ 13, citing Wills, at 325; State v. Beddow (Mar. 20, 1998), Montgomery App. No. 16197 (stating that "[i]f the pretrial confrontation procedure was not unduly suggestive, any remaining questions as to reliability go to the weight of the identification, not its admissibility, and no further inquiry into the reliability of the identification is required").
 {¶ 26} Accordingly, for the foregoing reasons, defendant's third assignment of error is overruled. *Page 11 
 {¶ 27} By his first assignment of error, defendant asserts that he received ineffective assistance of defense counsel because: (1) defense counsel failed to object to the admission of a photo array; (2) defense counsel failed to challenge testimonial inconsistencies by prosecution witnesses related to the photo array; (3) defense counsel failed to object to leading and improper questioning by the state; (4) defense counsel failed to object to prosecution witnesses' purported failures to answer questions propounded to them; (5) defense counsel failed to present an opening statement; (6) defense counsel failed to proffer any character witness testimony; and (7) defense counsel failed to object to the trial court's application of State v. Foster, 109 Ohio St.3d 1,2006-Ohio-856, reconsideration denied, 109 Ohio St.3d 1408,2006-Ohio-1703, certiorari denied, ___ U.S. ___, 127 S.Ct. 442.
 {¶ 28} "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Strickland v. Washington (1984), 466 U.S. 668,686, 104 S.Ct. 2052, rehearing denied, 467 U.S. 1267, 104 S.Ct. 3562. When asserting an ineffective assistance of counsel claim, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, at 694.
 {¶ 29} In Strickland, the United States Supreme Court set forth this two-pronged test:
 * * * First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the *Page 12 Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.
Id. at 687. See, also, Wiggins v. Smith (2003), 539 U.S. 510, 521,123 S.Ct. 2527 (discussing Strickland); Gideon v. Wainwright (1963),372 U.S. 335, 83 S.Ct. 792 (holding that right to counsel under theSixth Amendment is made obligatory on the states throughFourteenth Amendment).
 {¶ 30} "In making the determination whether the specified errors resulted in the required prejudice, a court should presume, absent a challenge to the judgment on the grounds of evidentiary insufficiency, that the judge or jury acted according to law." Strickland, at 694. Furthermore, "a court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury." Id.
 {¶ 31} After the United States Supreme Court renderedStrickland, in State v. Bradley (1989), 42 Ohio St.3d 136, the Supreme Court of Ohio held in part: "Counsel's performance will not be deemed ineffective unless and until counsel's performance is proved to have fallen below an objective standard of reasonable representation and, in addition prejudice arises from counsel's performance." Id. at paragraph two of the syllabus, rehearing denied, 43 Ohio St.3d 712, certiorari denied (1990), 497 U.S. 1011, 110 S.Ct. 3258, rehearing denied (1990),497 U.S. 1050, 111 S.Ct. 16, following State v. Lytle (1976),48 Ohio St.2d 31, vacated on other grounds by, 438 U.S. 910, 98 S.Ct. 3135, andStrickland, supra. The Bradley court further held in part: "To show that a defendant has been prejudiced by counsel's deficient performance, the defendant must *Page 13 
prove that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." Id. at paragraph three.
 {¶ 32} Defendant first argues that his defense counsel was ineffective because he failed to object to the admission of the photo array.
 {¶ 33} "The failure to object is not a per se indicator of ineffective assistance of counsel because counsel may refuse to object for tactical reasons." State v. Cheatam, Richland App. No. 06-CA-88, 2007-Ohio-3009, at ¶ 94, citing State v. Gumm (1995), 73 Ohio St.3d 413, 428, reconsideration denied, 74 Ohio St.3d 1423, certiorari denied (1996),516 U.S. 1177, 116 S.Ct. 1275, rehearing denied (1996), 517 U.S. 1204,116 S.Ct. 1707; see, also, State v. Fisk, Summit App. No. 21196, 2003-Ohio-3149, at ¶ 9. "There are numerous ways to provide effective assistance of counsel, and debatable trial tactics and strategies do not constitute a denial of that assistance." Cheatam, at ¶ 94, citingState v. Clayton (1980), 62 Ohio St.2d 45, 49, certiorari denied,449 U.S. 879, 101 S.Ct. 227.
 {¶ 34} Here, neither the photo array itself nor the procedure used by the police detective when she submitted the photo array to the victims for review was impermissibly suggestive. Moreover, notwithstanding defendant's claim that the photo array offered no relevant substantive evidence, the trial court reasonably could have concluded that the photo array was relevant evidence because it had a tendency to establish that defendant was the perpetrator of the crimes at issue, and the trial court also reasonably could have concluded that the photo array's probative value was not substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury. *Page 14 
 {¶ 35} Because under Strickland "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," Id. at 689, because the photo array properly was admissible, and because nothing in the record shows why defense counsel failed to object, we cannot conclude that defendant properly supported his burden of demonstrating error by his attorney. See, e.g., Murphy, at 539 (stating that "[s]ince the burden of showing attorney error is on appellant, we cannot presume such error; and since nothing in the record shows why counsel did not object, we cannot find that the failure to object was the product of error") (emphasis sic); see, also, State v. Mackey (Feb. 14, 2000), Warren App. No. CA99-06-065, dismissed, appeal not allowed by, 89 Ohio St.3d 1426, and appeal not allowed by, 94 Ohio St.3d 1409, citing Gumm, at 428 (stating that "failure to make objections does not automatically constitute ineffective assistance, as that failure may be justified as a tactical decision").
 {¶ 36} Accordingly, under such facts and circumstances as these, we cannot conclude that defendant has proven that defense counsel's representation fell below an objective standard of reasonable representation because defense counsel failed to object to the admission of the photo array.
 {¶ 37} Defendant also claims that defense counsel prejudicially erred by failing to object to the introduction of forms related to the photo array on the grounds that these forms contained inadmissible hearsay statements by the victims. See, generally, Evid.R. 801 and 802. Defendant also asserts that defense counsel was ineffective because defense counsel failed to challenge the police detective's purported inconsistent testimony related to the photo array. *Page 15 
 {¶ 38} Even assuming defense counsel's failure to challenge the admission of the photo array forms and defense counsel's failure to challenge the police detective's purported inconsistent testimony related to the photo array fell below an objective standard of reasonable representation, we cannot conclude that, were it not for defense counsel's errors, the result of the trial would have been different. Here, both victims testified without equivocation that defendant was the perpetrator that forcibly entered their home on October 9, 2004, and robbed them at gunpoint. Under such circumstances, we cannot conclude that these defense counsel errors deprived defendant of a fair trial whose result is reliable. See, e.g., State v.Minturn (Dec. 20, 1994), Franklin App. No. 94APA04-532 (finding that the outcome of a trial would not have been otherwise if impermissible hearsay statement had not been introduced).
 {¶ 39} Defendant also asserts that defense counsel was ineffective because: (1) defense counsel failed to object to purportedly leading and improper questioning by the state; (2) defense counsel failed to object to improper argumentation by the state during closing arguments; and (3) defense counsel failed to object to prosecution witnesses' purported failure to answer questions propounded to them.
 {¶ 40} "`[T]here can be no such thing as an error-free, perfect trial, and * * * the Constitution does not guarantee such a trial.'" State v.Hill (1996), 75 Ohio St.3d 195, 212, reconsideration denied,75 Ohio St.3d 1453, certiorari denied, 519 U.S. 895, 117 S.Ct. 241, quotingUnited States v. Hasting (1983), 461 U.S. 499, 508-509, 103 S.Ct. 1974; see, also, State v. Fawn (1983), 12 Ohio App.3d 25, 28, citing State v.Fluellen (June 27, 1978), Franklin App. No. 77AP-778 (stating that "[a]n accused is entitled to a fair trial, not a perfect trial"). "It is all too tempting for a defendant to second-guess *Page 16 
counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." Strickland, at 689.
 {¶ 41} Although "[i]t is improper for an attorney to express his personal belief or opinion as to the credibility of a witness or as to guilt of the accused," State v. Smith (1984), 14 Ohio St.3d 13, 14, we cannot conclude that in this case defense counsel's failure to object to the prosecutor's references to the victims' credibility in closing arguments proves that there exists a reasonable probability that, were it not for defense counsel's failure to object, the result of the trial would have been different. See, e.g., State v. Maurer (1984),15 Ohio St.3d 239, 267, certiorari denied (1985), 472 U.S. 1012, 105 S.Ct. 2714, rehearing denied (1985), 473 U.S. 924, 106 S.Ct. 15, quoting Dunlop v.United States (1897), 165 U.S. 487, 498, 17 S.Ct. 375 (stating that "we are constrained to keep in mind that `[i]f every remark made by counsel outside of the testimony were ground for a reversal, comparatively few verdicts would stand, since in the ardor of advocacy, and in the excitement of trial, even the most experienced of counsel are occasionally carried away by this temptation'").
 {¶ 42} Also, even assuming, arguendo, that defense counsel's failure to object to improper questioning and improper argumentation by the state, and defense counsel's failure to object to non-responsive answers were deficient, we cannot conclude that these failures were "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland, at 687. See Horsley, at ¶ 41 (finding that failure to object must rise to level of plain error before it constitutes ineffective assistance of counsel). Cf. State v. Sieng (Dec. 30, 1999), Franklin App. No. 99AP-282 (finding that trial counsel's cross- *Page 17 
examination of a witness exposed more details of defendant's drug dealings and related lifestyle thereby constituting inadequate representation).
 {¶ 43} Defendant also asserts that defense counsel was ineffective because defense counsel failed to present an opening statement at trial. "Whether trial counsel decides to not make an opening statement `is a tactical decision that will not ordinarily rise to the level of ineffective assistance of counsel.'" State v. Horsley, Franklin App. No. 05AP-1152, 2006-Ohio-6217, at ¶ 53, quoting State v. Addison, Franklin App. No. 03AP-1102, 2004-Ohio-5154, at ¶ 13, citing State v.Williams (1991), 74 Ohio App.3d 686, dismissed, jurisdictional motion overruled, 62 Ohio St.3d 1463, rehearing denied (1992),62 Ohio St.3d 1497. Conclusory assertions are insufficient to demonstrate ineffective assistance of counsel. State v. Hall, Franklin App. No. 04AP-1242,2005-Ohio-5162, at ¶ 58, citing State v. Buckingham, Montgomery App. No. 19205, 2003-Ohio-44, at ¶ 17.
 {¶ 44} In Toledo v. Esmond, Lucas App. No. L-05-1074, 2005-Ohio-6246, the appellant contended that defense counsel's waiver of opening statement failed to give the trier of fact an adequate "map" of the defense plan or strategy. Id. at ¶ 14. Unpersuaded by appellant's contention, the Esmond court stated that under Strickland "`a fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Id. at ¶ 14, citingStrickland, at 689. The Esmond court further stated that "[i]n hindsight, another attorney may have preferred to give an outline of his argument. However, the purpose of this requirement is not to create a standard procedure for trying cases, but to ensure appellant received a fair trial." Id. *Page 18 
 {¶ 45} Here, if defense counsel had presented a theory of the case in an opening statement, and if defendant, through defense counsel, failed to present evidence on that theory, the state likely would have commented on such failure. Thus, defense counsel's decision to forego opening statement may have been a tactical choice. See, e.g., State v.Harris, Cuyahoga App. No. 87918, 2007-Ohio-410, at ¶ 11-12; State v.Harris, Cuyahoga App. No. 87915, 2007-Ohio-526, at ¶ 5. Accordingly, we cannot conclude that defense counsel's decision to forego an opening statement by itself constitutes ineffective assistance of counsel.
 {¶ 46} Defendant also asserts defense counsel was ineffective because he failed to proffer any character witnesses on defendant's behalf. A defense counsel's decision not to call a character witness on behalf of a defendant falls squarely within the parameters of strategic choice and such a decision should not be examined by a reviewing court through hindsight. State v. Abernathy (July 22, 1993), Cuyahoga App. No. 63284, citing State v. Steckel (Sept. 21, 1989), Cuyahoga App. No. 52594.
 {¶ 47} "It is well-settled that by presenting evidence of a defendant's good character, a defense attorney `opens the door' to cross-examination of such character witnesses regarding relevant specific instances of appellant's past conduct." State v. Ogletree, Cuyahoga App. No. 84446, 2004-Ohio-6297, at ¶ 45, citing Evid.R. 405(A);State v. Collins (1994), 97 Ohio App.3d 438, dismissed by,70 Ohio St.3d 1440; State v. Hart (1991), 72 Ohio App.3d 92, 97-100, dismissed, jurisdictional motion overruled by, 61 Ohio St.3d 1418. Such instances may include a defendant's prior criminal convictions. Ogletree, at ¶ 45, citing State v. Bailey (Apr. 9, 1987), Cuyahoga App. No. 51968;State v. Hester, Franklin App. No. 02AP-401, 2002-Ohio-6966; State v.Wright (1988), *Page 19 48 Ohio St.3d 5, rehearing denied, 48 Ohio St.3d 711. See, also, State v.Pore, Cuyahoga App. No. 86215, 2006-Ohio-106, at ¶ 28, appeal not allowed, 109 Ohio St.3d 1458, 2006-Ohio-2226.
 {¶ 48} Here, defendant had a history of prior criminal convictions. Although defendant himself testified about his criminal convictions, defense counsel reasonably could have made a strategic decision to forgo calling any character witnesses on defendant's behalf because he did not want to further "open the door" to an inquiry regarding relevant specific instances of defendant's past conduct.
 {¶ 49} Moreover, absent any proffered evidence as to the substance of the testimony of any potential character witness, we cannot determine on appeal whether defendant was prejudiced by defense counsel's failure to call any character witnesses. "Where the allegation of ineffective assistance of counsel is based on facts outside the trial record, it has been held that the appropriate remedy is a proceeding for post-conviction relief." State v. Parker (Apr. 15, 1987), Defiance App. No. 4-85-16, citing State v. Cooperrider (1983), 4 Ohio St.3d 226, 228.
 {¶ 50} Defendant also asserts that defense counsel was ineffective because defense counsel failed to object to the trial court's application of Foster, supra, on grounds that Foster violates ex post facto principles and that Foster is incompatible with case authority of the United States Supreme Court. Because, as discussed within,Foster does not violate ex post facto principles and Foster is not incompatible with case authority of the Supreme Court, even assuming defense counsel was deficient for failing to raise an objection based onFoster, we cannot conclude that defense counsel's performance prejudiced defendant. Accordingly, we find defendant's contention that defense counsel *Page 20 
was ineffective by failing to raise an objection to the trial court's application of Foster is unavailing.
 {¶ 51} Finally, while collectively a defense counsel's errors may serve to deprive a defendant of a fair trial, Sieng, supra, under the facts of this case, we cannot conclude that defendant has shown by a reasonable probability that the results of the proceeding would have been different but for defense counsel's purportedly deficient performance.
 {¶ 52} Accordingly, for the foregoing reasons, we overrule defendant's first assignment of error.
 {¶ 53} Defendant's second assignment of error asserts that defendant was denied a right to a fair trial and the effective assistance of counsel by the admission of the photo array that purportedly was cumulative, inadmissible, prejudicial, meaningless, and irrelevant, and by the admission of inadmissible hearsay testimony. See, generally,Kroger v. Ryan (1911), 83 Ohio St. 299, at paragraph one of the syllabus (defining cumulative evidence); see, also, State v. Callihan, Scioto App. No. 01CA2815, 2002-Ohio-5878, at ¶ 22.
 {¶ 54} As discussed above, the trial court reasonably could have concluded that the photo array was relevant evidence because it had a tendency to establish that defendant was the perpetrator of the crimes at issue. Also, as discussed above, the trial court reasonably could have concluded that the probative value of the photo array was not substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury. Moreover, the trial court also reasonably could have concluded that the procedures surrounding the photo array were relevant to issues concerning the reliability and thoroughness of the police investigation. *Page 21 
 {¶ 55} Also, to the extent that the police detective's testimony contained inadmissible hearsay, we cannot conclude that defense counsel's failure to object to the inadmissible hearsay deprived defendant of a fair trial whose result is reliable. Neither do we conclude that defense counsel's failure to object deprived defendant of due process under the law, or the effective assistance of counsel.
 {¶ 56} Accordingly, for the foregoing reasons, we overrule defendant's second assignment of error.
 {¶ 57} Defendant's fourth assignment of error asserts that the trial court erred by sentencing defendant to non-minimum and consecutive sentences under Foster because Foster is purportedly incompatible with precedent of the United States Supreme Court.
 {¶ 58} Here, by failing to raise an objection to the trial court's application of Foster at trial, defense counsel failed to preserve this claim of error for appellate review. See, e.g., State v. Trewartha, Franklin App. No. 05AP-513, 2006-Ohio-5040, at ¶ 28, citing State v.Awan (1986), 22 Ohio St.3d 120, holding limited by In re M.D. (1988),38 Ohio St.3d 149 (stating that "[constitutional arguments not raised at trial are generally deemed waived"). Nevertheless, even assuming that defense counsel properly preserved this claim of error, for the reasons discussed within, we find defendant's fourth assignment of error is without merit.
 {¶ 59} By his fourth assignment of error, defendant essentially urges this court to find that Foster is unconstitutional. We decline such an invitation.
 {¶ 60} "A court of appeals is bound by and must follow decisions of the Ohio Supreme Court, which are regarded as law unless and until reversed or overruled." Sherman v. Millhon (June 16, 1992), Franklin App. No. 92AP-89, dismissed, jurisdictional *Page 22 
motion overruled, 65 Ohio St.3d 1454, citing Battig v. Forshey (1982),7 Ohio App.3d 72, and Thacker v. Bd. of Trustees of Ohio State Univ. (1971), 31 Ohio App.2d 17, affirmed (1973), 35 Ohio St.2d 49, overruled in part on other grounds, Schenkolewski v. Cleveland MetroparksSystem (1981), 67 Ohio St.2d 31, paragraph one of the syllabus; see, also, State v. Worrell, Franklin App. No. 06AP-706, 2007-Ohio-2216, at ¶ 10; Cooke v. Montgomery Cty., 158 Ohio App.3d 139, 2004-Ohio-3780, at ¶ 39. "Intermediate appellate courts should follow prior Supreme Court rulings unless they have good reason to know those rulings no longer apply." Sanders v. Mt. Sinai Hosp. (1985), 21 Ohio App.3d 249, 257.
 {¶ 61} Because Foster has not been reversed or overruled, because we lack any good reason to know that Foster's holdings are no longer applicable, and because we are bound by and must follow decisions of the Supreme Court of Ohio, we are required to apply Foster.
 {¶ 62} In Foster, the Supreme Court of Ohio held in part that "[t]rial courts have full discretion to impose a prison sentence within the statutory range and are no longer required to make findings or give their reasons for imposing maximum, consecutive, or more than the minimum sentences." Id. at paragraph seven of the syllabus; see, also, id. at ¶ 105 (stating that "[i]f an offender is sentenced to multiple prison terms, the court is not barred from requiring those terms to be served consecutively"). Thus, "[t]he implication of Foster is that a trial court is no longer required to give reasons or findings prior to imposing maximum, consecutive, and/or nonminimum sentences; it has full discretion to impose a sentence within the statutory range." State v.Clark, Mahoning App. No. 04 MA 246, 2007-Ohio-1114, at ¶ 10, citingFoster, at ¶ 100; see, also, Worrell, at ¶ 8-9. *Page 23 
 {¶ 63} Consequently, because defendant was sentenced afterFoster, the trial court had full discretion to impose a prison sentence within the statutory range, including imposing non-minimum and consecutive sentences.
 {¶ 64} Accordingly, for the foregoing reasons, defendant's fourth assignment of error is overruled.
 {¶ 65} By his fifth assignment of error, defendant asserts the trial court's sentence violates the ex post facto clause of the United States Constitution because the trial court followed Foster when it sentenced defendant.
 {¶ 66} Here, even assuming that defense counsel properly preserved this claim of error, see, e.g., Trewartha, at ¶ 28 (stating that constitutional arguments that are not raised at trial are generally waived), for the reasons discussed within, defendant's fifth assignment of error is not well-taken.
 {¶ 67} First, to the extent that defendant in his fifth assignment of error invites us to declare that Foster is unconstitutional, we decline such an invitation for the reasons discussed in our determination of defendant's fourth assignment of error.
 {¶ 68} Secondly, this court previously has considered and rejected claims that the severance remedy of Foster, supra, violates ex post facto principles. See, e.g., State v. Peebles, Franklin App. No. 07AP-29, 2007-Ohio-3296, at ¶ 7-8; State v. Hudson, Franklin App. No. 06AP-35, 2007-Ohio-3227, at ¶ 25-26; State v. Gibson, Franklin App. No. 06AP-508, 2006-Ohio-6899, at ¶ 18, appeal not allowed (2007),113 Ohio St.3d 1514, 2007-Ohio-2208; State v. Pigot, Franklin App. No. 06AP-343,2007-Ohio-141, at ¶ 7, appeal not allowed by (2007),113 Ohio St.3d 1515, 2007-Ohio-2208; State v. Alexander, Franklin App. No. 06AP-501,2006-Ohio-6375, at ¶ 7-8, appeal not allowed (2007), *Page 24 113 Ohio St.3d 1444, 2007-Ohio-1266; State v. Ragland, Franklin App. No. 04AP-829,2007-Ohio-836, at ¶ 9; State v. Satterwhite, Franklin App. No. 06AP-666,2007-Ohio-798, at ¶ 18-19; State v. Houston, Franklin App. No. 06AP-662,2007-Ohio-423, at ¶ 3-4, appeal not allowed, 114 Ohio St.3d 1426,2007-Ohio-2904. See, also, State v. McGhee, Shelby App. No. 17-06-05,2006-Ohio-5162, appeal not allowed (2007), 112 Ohio St.3d 1491,2007-Ohio-724, reconsideration denied (2007), 113 Ohio St.3d 1470,2007-Ohio-1722; State v. Green, Ashtabula App. No. 2005-A-0069,2006-Ohio-6695, at ¶ 22; State v. Dyer, Cuyahoga App. No. 88202,2007-Ohio-1704, at ¶ 42-59; State v. Sheets, Clermont App. No. CA2006-04-032, 2007-Ohio-1799, at ¶ 8-9. We find no reason to depart from this court's precedents that rejected claims that the severance remedy of Foster violates ex post facto principles.
 {¶ 69} Accordingly, following this court's judicial antecedents, we overrule defendant's fifth assignment of error.
 {¶ 70} Defendant's sixth assignment of error asserts thatFoster violates Rogers v. Tennessee (2001), 532 U.S. 451,121 S.Ct. 1693. Defendant's sixth assignment of error further asserts that the trial court prejudicially erred by applying Foster becauseFoster purportedly violates Rogers. Here, even assuming that defense counsel properly preserved this claim of error for appellate review, see, e.g., Trewartha, at ¶ 28 (stating that constitutional arguments that are not raised at trial are generally waived), for the reasons discussed within, defendant's sixth assignment of error is unconvincing.
 {¶ 71} First, to the extent that defendant in his sixth assignment of error invites us to declare that Foster runs afoul of Rogers, for the reasons discussed in our disposition of defendant's fourth assignment of error, we decline such an invitation. See, also, Alexander, at ¶ 7 (observing that this court and a trial court are bound to applyFoster as it *Page 25 
is written); see, also, State v. Durbin, Greene App. No. 2005-CA-134,2006-Ohio-5125, at ¶ 42 (stating that "[a]s an Ohio court inferior to the Ohio Supreme Court, we are required to follow its mandates; we lack the jurisdictional power to declare a mandate of the Ohio Supreme Court to be unconstitutional").
 {¶ 72} In Rogers, the Supreme Court of Tennessee abolished a rule as it had existed at common law in Tennessee and then applied its decision to uphold a defendant's conviction. Id. at 453. After granting certiorari, the United States Supreme Court considered whether the Tennessee Supreme Court violated the Fourteenth Amendment to the United States Constitution by its retroactive application of its decision. Id. at 453. Finding that the Tennessee Supreme Court's abolition of the common law rule failed to represent an exercise of the sort of unfair and arbitrary judicial action against which the Due Process Clause aimed to protect, the Rogers court affirmed the judgment of the Supreme Court of Tennessee. Id. at 466-467.
 {¶ 73} "Retroactive judicial decision-making is limited by the due process concept of fair warning[.]" State v. Bruce, 170 Ohio App.3d 92,2007-Ohio-175, at ¶ 8, appeal not allowed, 113 Ohio St.3d 1492,2007-Ohio-1986, citing Rogers, at 459. "With respect to judicial decisions, fair warning is violated when the judicial interpretation is `unexpected and indefensible by reference to the law which had been expressed prior to the conduct in issue.'" Bruce, at ¶ 8, quotingRogers, at 461-462, quoting Bouie v. Columbia (1964), 378 U.S. 347, 354,84 S.Ct. 1697.
 {¶ 74} Here, we cannot conclude that defendant lacked fair warning of the Foster decision. "As Foster points out, Apprendi v. New Jersey
[(2000), 530 U.S. 466, 120 S.Ct. 2348] and Ring v. Arizona [(2002),536 U.S. 584, 122 S.Ct. 2428] were the beginnings of *Page 26 
the United States Supreme Court's decisions declaring judicial fact-finding in the sentencing context unconstitutional."Bruce, at ¶ 9, citing Foster, at ¶ 3-4. Defendant committed the crimes for which he was convicted in October 2004, and he was sentenced on March 1, 2006, which was well after Apprendi and Ring were decided.
 {¶ 75} Also, Foster examined Ohio's felony sentencing structure in light of Apprendi and Blakely v. Washington (2004), 542 U.S. 296,124 S.Ct. 2531, rehearing denied, 542 U.S. 961, 125 S.Ct. 21, which was decided on June 24, 2004. Bruce, at ¶ 10; Foster, at ¶ 3-4.Foster also applied a severance remedy based on United States v.Booker (2005), 543 U.S. 220, 125 S.Ct. 738, which was rendered prior to defendant's sentencing hearing. See Bruce, at ¶ 10; Foster, at paragraphs two, four, and six of the syllabus and ¶ 1 and 92-102. See, also, State v. Mullins, Franklin App. No. 06AP-640, 2007-Ohio-796, at ¶ 11 (stating that "[g]iven the existence of R.C.1.50 [severability of statutory provisions] and the numerous occasions in which R.C. 1.50 has been applied to both civil and criminal cases over the years, the Supreme Court of Ohio's remedy for the Sixth Amendment problems presented by Ohio's sentencing laws could not be considered either `unexpected' or `indefensible'").
 {¶ 76} Thus, "Foster was not `unexpected and indefensible by reference to the law which had been expressed prior' to [defendant's] offense."Bruce, at ¶ 10, quoting Rogers, at 461-462. (Footnote omitted.) Furthermore, defendant was on notice of the statutory range of punishments at the time that he committed the offenses for which he was convicted. Defendant also was on notice that his sentence would depend on statutory considerations by the trial court. See, e.g.,Bruce, at ¶ 11; Gibson, at ¶ 18. Furthermore, *Page 27 
defendant also was on notice that the judicial severance of offensive statutory provisions was a possible remedy. See Mullins, at ¶ 11.
 {¶ 77} Moreover, this court already has rejected claims that a trial court's application of Foster violates Rogers. See Satterwhite, at ¶ 10-19; Hudson, at ¶ 25-26; Mullins, at ¶ 6-11; State v. Fout, Franklin App. No. 06AP-664, 2007-Ohio-619, at ¶ 3-7, appeal not allowed,114 Ohio St.3d 1428, 2007-Ohio-2904; Houston, at ¶ 3-5. Accordingly, defendant's claims that his sentence lacked fair warning and that Foster runs afoul of Rogers are not well-taken.
 {¶ 78} We therefore overrule defendant's sixth assignment of error.
 {¶ 79} Defendant's seventh assignment of error asserts that the trial court erred by violating the rule of lenity. "The rule of lenity, R.C.2901.04(A), is a rule of statutory construction which provides that `sections of the Revised Code defining offenses or penalties shall be strictly construed against the state, and liberally construed in favor of the accused.'" State v. Hudson, Franklin App. No. 06AP-885,2007-Ohio-3227, at ¶ 27. The rule of lenity "applies only where there is ambiguity in a statute or a conflict between statutes." Id., citingState v. Moore, Allen App. No. 1-06-51, 2006-Ohio-6860, at ¶ 11-12;Green, at ¶ 24; see, also, State v. Swann, Franklin App. No. 06AP-870,2007-Ohio-2010, at ¶ 33 (Brown, J., concurring separately) (Sadler, J., concurring in part and dissenting in part) (describing rule of lenity).
 {¶ 80} "There exists no ambiguity in the sentencing statutes in Ohio because the Supreme Court of Ohio held that portions of Ohio's felony sentencing framework was unconstitutional and void in State v. Foster,supra." Bruce, at ¶ 13. Because there is no *Page 28 
ambiguity in a statute or conflict between statutes, we find that the rule of lenity is inapposite in this case. See, e.g., Hudson, at ¶ 27.
 {¶ 81} Moreover, this court has also recently considered and rejected the argument raised by defendant's seventh assignment of error. SeeHudson, at ¶ 27; State v. Henderson, Franklin App. No. 06AP-645,2007-Ohio-382, at ¶ 10, appeal not allowed by, 114 Ohio St.3d 1413,2007-Ohio-2632; Ragland, at ¶ 10; Houston, at ¶ 7; andSatterwhite, at ¶ 22-23.
 {¶ 82} Defendant's seventh assignment of error is therefore overruled.
 {¶ 83} In summary, we hold that defendant was not deprived of the effective assistance of defense counsel; the trial court did not err by overruling defendant's motion to suppress evidence; the trial court did not err by applying Foster when it sentenced defendant; and defendant's sentence does not violate the rule of lenity.
 {¶ 84} Accordingly, having overruled all seven of defendant's assignments of error, we affirm the judgment of the Franklin County Court of Common Pleas. Construing the state's statement seeking withdrawal of its cross-appeal as a motion seeking dismissal of the cross-appeal, we grant the state's motion and dismiss the state's cross-appeal.
Judgment affirmed; motion granted; cross-appeal dismissed.
 BRYANT and KLATT, JJ., concur. *Page 1