[Cite as *State v. Grier*, 2011-Ohio-3815.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT


STATE OF OHIO

    Plaintiff-Appellee

-vs-

ROBERT GODFREY GRIER

    Defendant-Appellant

JUDGES:
Hon. Sheila G. Farmer, P. J.
Hon. John W. Wise, J.
Hon. Patricia A. Delaney, J.

Case No. 2010 CA 00246


O P I N I O N


| CHARACTER OF PROCEEDING: | Criminal Appeal from the Court of Common Pleas, Case No. 2010 CR 00653 |
|---|---|
| JUDGMENT: | Affirmed |
| DATE OF JUDGMENT ENTRY: | August 1, 2011 |

APPEARANCES:

For Plaintiff-Appellee                                          For Defendant-Appellant

JOHN D. FERRERO                                          RODNEY A. BACA
PROSECUTING ATTORNEY                          610 Market Avenue North
RONALD MARK CALDWELL                          Canton, Ohio  44702
ASSISTANT PROSECUTOR
110 Central Plaza South, Suite 510
Canton, Ohio  44702-1413

*Wise, J.*

{¶1}    Appellant Robert Godfrey Grier appeals from his conviction and sentence in the Stark County Court of Common Pleas for robbery and drug trafficking. The relevant facts leading to this appeal are as follows.

{¶2}    The events at issue center on a disrupted undercover drug buy on May 6, 2010 on the near west side of Canton. At about 7:50 PM that evening, Detective Zachary Taylor of the Canton Police Department was working an investigation in an unmarked pickup truck near Newton Place NW when he was approached by appellant. A brief conversation ensued, during which Taylor asked appellant what he had to sell. Appellant then jumped into the front passenger seat and directed Taylor to drive around the downtown area. Appellant pulled out a clear plastic bag at one point, but Taylor could not see what was in it. Eventually, appellant told Taylor to pull into a secluded alley near Eighth Street and Shorb Avenue NW. Appellant also told Taylor to shut off the lights and engine; however, the officer left the engine running. Unbeknownst to Taylor, his monitoring equipment had malfunctioned, and back-up officers had lost his exact location.

{¶3}    Appellant then asked Taylor to give him money up front so that he could go to a nearby house and purchase crack cocaine. After some discussion, appellant

agreed to get the crack first and return to the vehicle to make the sale. However, shortly after appellant got out of the vehicle, he came over to the driver's side open window and suddenly jumped at the cash Taylor was holding. Taylor put the vehicle in reverse as a struggle ensued between the two men. The gear shift was somehow forced into the drive position, and the truck began moving forward. Appellant finally gave up the struggle and pulled himself out of the vehicle's window.

{¶4} Taylor drove away from the alley and reported via a handheld radio he had hidden under the seat that he "just got robbed." As he drove, Taylor saw appellant walking between some houses. He relayed this information to other officers, who were able to apprehend appellant on a porch in the 700 block of Shorb Avenue.

{¶5} Appellant was transported to the station, where he agreed to talk to police. He insisted that Officer Taylor had tried to sell drugs to him, not vice versa, and that he had merely intended to assault Taylor, not rob him. Appellant also offered to assist in future undercover operations.

{¶6} On June 14, 2010, the Stark County Grand Jury indicted appellant on one count of robbery (R.C. 2911.02(A)(3)) and one count of trafficking in cocaine (R.C. 2925.03(A)(1)/(C)(4)(a)). Appellant entered pleas of not guilty to both charges, and the matter proceeded to a jury trial on July 28-29, 2010. The jury court found appellant guilty as charged. The court thereafter sentenced appellant, inter alia, to six years in prison.

{¶7} On September 1, 2010, appellant filed a notice of appeal. He herein raises the following four Assignments of Error:

**{¶8}** "I. THE APPELLANT WAS DENIED HIS RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL.

**{¶9}** "II. THE EVIDENCE IS INSUFFICIENT TO SUSTAIN THE CONVICTION AND THE VERDICT IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

**{¶10}** "III. THE TRIAL COURT ABUSED ITS DISCRETION AND DENIED THE APPELLANT HIS DUE PROCESS RIGHTS TO A FAIR TRIAL BY FAILING TO GRANT HIS MOTION FOR MISTRIAL.

**{¶11}** "IV. THE TRIAL COURT ERRED WHEN IT ABUSED ITS DISCRETION IN SENTENCING APPELLANT TO THE MAXIMUM PRISON TERM."

I.

**{¶12}** In his First Assignment of Error, appellant contends he was denied the effective assistance of counsel at his trial. We disagree.

**{¶13}** Our standard of review for ineffective assistance claims is set forth in *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674. Ohio adopted this standard in the case of *State v. Bradley* (1989), 42 Ohio St.3d 136, 538 N.E.2d 373. These cases require a two-pronged analysis in reviewing a claim for ineffective assistance of counsel. First, we must determine whether counsel's assistance was ineffective; i.e., whether counsel's performance fell below an objective standard of reasonable representation and was violative of any of his essential duties to the client. If we find ineffective assistance of counsel, we must then determine whether or not the defense was actually prejudiced by counsel's ineffectiveness such that the reliability of the outcome of the trial is suspect. This requires a showing that there is a reasonable probability that but for counsel's unprofessional error, the outcome of the

trial would have been different. Id. Trial counsel is entitled to a strong presumption that all decisions fall within the wide range of reasonable professional assistance. *State v. Sallie* (1998), 81 Ohio St.3d 673, 675, 693 N.E.2d 267.

### Opening Statements

**{¶14}** Appellant first challenges his trial counsel's performance during opening arguments. After the trial court afforded both counsel the opportunity for opening statements and the prosecutor had made his remarks, defense counsel spoke to the jury chiefly concerning the burden of proof being on the State and that the verdict must be based entirely on the evidence at trial. Appellant presently faults his trial counsel for not talking to the jury about the nature of the evidence with which they would be presented or what the defense would contradict.

**{¶15}** In many cases, it may be prudent for a defense attorney to avoid presenting a theory of the case to the jury in opening statements, as any subsequent failure to develop and present evidence on such theory would invite the State to later comment on that failure to the jurors. See *State v. Harris*, Cuyahoga App.No. 87915, 2007-Ohio-526, ¶ 5, citing *State v. Collins,* 89 Ohio St.3d 524, 527, 2000-Ohio-231. In the case sub judice, defense counsel chose to focus on a strategy of challenging whether the State could meet its burden of proof. Upon review, we do not find trial counsel's performance in this regard fell below an objective standard of reasonable representation.

### Responding to Officer's Testimony

**{¶16}** Appellant secondly challenges the failure of his trial counsel to object to certain portions of the testimony of Detective Taylor. Appellant takes specific issue with

Taylor's testimony that he had alerted other officers over a radio that he had been robbed, and that he declined to work with appellant as a confidential informant because appellant could not be trusted given his conduct during the incidents of May 6, 2010. Appellant also points to Taylor's testimony about appellant's statements that he was a crack user, that he knew crack dealers, and that he could help the police in catching people connected with the crack trade.

{¶17} It is well established that "[c]ompetent counsel may reasonably hesitate to object [to errors] in the jury's presence because objections may be considered bothersome by the jury and may tend to interrupt the flow of a trial." *State v. Rogers* (April 14, 1999), Summit App.No. 19176, 1999 WL 239100, citing *State v. Campbell* (1994), 69 Ohio St.3d 38, 53, 630 N.E.2d 339 (internal quotations omitted). Moreover, the United States Supreme Court and the Ohio Supreme Court have held a reviewing court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." *Bradley* at 143, 538 N.E.2d 373, quoting *Strickland* at 697. In this instance, given the State's evidence that appellant approached the detective, directed him to drive around city streets, and took him to an apparent crack house before suddenly trying to wrest cash from him, we find overwhelming support for the trafficking and robbery charges, and we are unpersuaded that appellant's case was prejudiced by appellant's trial counsel handling of the detective's testimony.

### *Responding to Officer's Qualifications as a Witness*

{¶18} Finally, appellant contends his trial counsel effectively allowed the State to use Detective Taylor as an expert witness, based on the officer's testimony about crack

cocaine being a Schedule II substance, the levels of strength of crack, and its effect on a user. See Tr. at 155. However, given that police officers combating the illegal narcotics trade would generally be expected to develop basic familiarity with many of the scientific aspects involved, we again are unpersuaded that appellant's case was prejudiced by appellant's trial counsel handling of the detective's testimony in this regard.

{¶19} Appellant's First Assignment of Error is therefore overruled.

II.

{¶20} In his Second Assignment of Error, appellant contends his conviction for cocaine trafficking and robbery was not supported by sufficient evidence and was against the manifest weight of the evidence. We disagree.

{¶21} In reviewing a claim of insufficient evidence, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus.

{¶22} In regard to the offense of trafficking in drugs, R.C. 2925.03(A)(1) sets forth the essential elements: "No person shall knowingly sell or offer to sell a controlled substance." See *State v. Moore*, Stark App.No. 2008-CA-00228, 2009-Ohio-4958, ¶ 12. The definition of "sale" has the same meaning as in R.C. 3719.01. See, R.C. 2925.01(A). " 'Sale' includes delivery, barter, exchange, transfer, or gift, or offer thereof, and each transaction of those natures made by any person, whether as principal, proprietor, agent, servant, or employee." R.C. 3719.01(AA).

**{¶23}** In the case sub judice, Detective Taylor recalled that appellant came up to the open window after the officer pulled over to the curb. Appellant asked what the officer needed, at which point Taylor "asked [appellant] what he had." Tr. at 130. Appellant thereupon jumped in the undercover truck and directed Taylor to drive around Canton. More discussion ensued, and when appellant asked what Taylor needed, the officer said "forty." Taylor recalled that appellant stated at least twice he would get "crack" for him. See Tr. at 133, 134. Appellant at that point directed Taylor to stop at a particular location near Shorb Avenue.

**{¶24}** In regard to the charge of robbery, R.C. 2911.02(A)(3) reads as follows: "No person, in attempting or committing a theft offense or in fleeing immediately after the attempt or offense, shall *** [u]se or threaten the immediate use of force against another."

**{¶25}** Appellant essentially seeks to downplay the extent of the struggle for the cash and maintains that the officer simply assumed that appellant was reaching for the money. However, Detective Taylor provided the following details as to what transpired after appellant suddenly re-approached the undercover vehicle:

**{¶26}** "So if you could picture the door is here, steering wheel, I had the money in this hand here. He jumps across and reaches to get the money.

**{¶27}** "I threw the vehicle in reverse, floored it, and for some reason just like I guess you would if you were a little kid, I was kind of like playing the keep-away game like oh, no, but I grabbed his left arm with my left arm, and I got the money in this hand, and now we're spinning. He's halfway in the vehicle and we're trying to go in reverse,

but like I said, it's kind of this make-shift parking area, pretty much the back yard of a house.  So we're not really going anywhere.  We're just spinning.

{¶28} "His right arm is right here.  He reaches forward with his right arm to get the money.  At this point I drop the money and grab his right arm, and he's going for, you know, the money.  It drops out of hand.  I grab his hand, and now we go into the gearshift and go straight down into one of the forward gears.  I'm not sure which gear it was but we go forward.

{¶29} "Now, I got ahold of his left hand and I got ahold of his right hand, and I'm crossed up with him, and he actually begins to reach down and mess with the keys of the truck trying to shut the truck off.

{¶30} "We begin to go forward at this time.  You can see him, he's a big guy.  I'm a bigger guy.  We're in the cab of a compact pickup truck tussling over the car keys and this money.  He's pretty much laying on top of me.  No one is driving this vehicle.  We're in the backyard of this house.  I think, you know, help is going to come.  Unfortunately, help didn't know where I was and they couldn't hear the struggle going on.

{¶31} "So now, the situation has kind of gone from bad to worse, and add on to that the fact that I got my full throttle on this vehicle and no one's driving it, no one's steering.

{¶32} "It got to the point where I was contemplating using legal force due to the fact that what am I going to do if Mr. Grier gets this vehicle stopped?  What am I going to do if Mr. Grier gets the keys out of this vehicle? * * *." Tr. at 136-138.

**{¶33}** Upon review, we find the testimony, construed most favorably to the State, amply supported both charges against appellant. Appellant's claim of insufficiency of the evidence is therefore not well taken.

**{¶34}** Appellant also raises a "manifest weight" challenge. Our standard of review on a manifest weight challenge to a criminal conviction is stated as follows: "The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 485 N.E.2d 717. See also, *State v. Thompkins* (1997), 78 Ohio St.3d 380, 678 N.E.2d 541. The granting of a new trial "should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." *Martin* at 175, 485 N.E.2d 717.

**{¶35}** Appellant's chief challenge goes to the robbery conviction, where he calls into factual question how Detective Taylor was able to put the vehicle into reverse while simultaneously holding the cash in his right hand and fending off appellant. Appellant also questions why it would have been necessary for him to have walked around to the driver's side window to get the cash when he could have simply grabbed it while still seated in the passenger's seat. We also note appellant initially told police that Detective Taylor was the seller, despite Taylor's testimony that he had been running several controlled buy operations on that date. Nonetheless, upon review, we find the jury did not clearly lose its way and create a manifest miscarriage of justice requiring that appellant's conviction be reversed and a new trial ordered.

**{¶36}** Appellant's Second Assignment of Error is therefore overruled.

III.

**{¶37}** In his Third Assignment of Error, appellant contends the trial court erred in failing to declare a mistrial. We disagree.

**{¶38}** Our standard of review for evaluating a trial court's decision to grant or deny a mistrial is abuse of discretion. *State v. Graewe*, Tuscarawas App.No. 2007 AP 10 0070, 2008-Ohio-5143, ¶ 46, citing *State v. Sage* (1987), 31 Ohio St.3d 173, 182, 510 N.E.2d 343. In order to find an abuse of discretion, we must determine the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 450 N.E.2d 1140.

**{¶39}** The specific incident at issue concerns Detective Taylor's testimony that appellant, while being interviewed at the station after his arrest, told officers he would be willing to "work off" some of the charges. Tr. at 142. Appellant's trial counsel objected at that point and moved for a mistrial on the basis that the jury was given the impression that appellant had a record of other charges pending against him. Tr. at 143.

**{¶40}** The record reflects that the trial court conducted a voir dire of Detective Taylor, outside the presence of the jury, during which Taylor clarified that appellant was talking about the robbery and trafficking charges that had just occurred. On cross-examination during this voir dire, defense counsel asked: "Maybe I was wrong but I thought your response when the Jury was still here to that question was that Mr. Grier offered to work off previous charges or prior charges." Tr. at 148. Taylor responded: "No, sir. Just the charges that he was going to be charged with that day. It was the

robbery and the trafficking in cocaine." Id. After the voir dire, Taylor repeated this testimony for the jury to review. Tr. at 150-152.

**{¶41}** Upon review of the aforesaid, we hold the trial court's denial of the motion for mistrial was not arbitrary, unreasonable or unconscionable.

**{¶42}** Appellant's Third Assignment of Error is therefore overruled.

IV.

**{¶43}** In his Fourth Assignment of Error, appellant contends the trial court erred in sentencing him to the maximum terms on each count. We disagree.

**{¶44}** We note the Ohio Supreme Court's *Foster* decision [109 Ohio St.3d 1, 2006-Ohio-856] holds that judicial fact finding is not required before a court imposes non-minimum, maximum or consecutive prison terms. See, e.g., *State v. Williams*, Muskingum App. No. CT2009-0006, 2009-Ohio-5296, ¶ 19, citing *State v. Hanning*, Licking App.No. 2007CA00004, 2007-Ohio-5547, ¶ 9. Subsequent to *Foster*, in a plurality opinion, the Ohio Supreme Court established a two-step procedure for reviewing a felony sentence. *State v. Kalish*, 120 Ohio St.3d 23, 2008-Ohio-4912, 896 N.E.2d 124. The first step is to "examine the sentencing court's compliance with all applicable rules and statutes in imposing the sentence to determine whether the sentence is clearly and convincingly contrary to law." *Kalish* at ¶ 4. If this first step is satisfied, the second step requires the trial court's decision be reviewed under an abuse-of-discretion standard. Id.

**{¶45}** In the case sub judice, the trial court stated in its written entry that it had considered the record, the oral statements of the parties, and any presentence reports. See Sentencing Entry, August 13, 2010. The court also specifically referenced the

purposes of sentencing set forth in R.C. 2929.11 and the seriousness and recidivism factors found in R.C. 2929.12. Id.

{¶46} Based on our review of the record, and pursuant to *Foster* and *Kalish,* we do not find the trial court acted clearly and convincingly contrary to law or abused its discretion in rendering maximum sentences under the facts and circumstances of this case.

{¶47} Appellant's Fourth Assignment of Error is therefore overruled.

{¶48} For the reasons stated in the foregoing opinion, the judgment of the Court of Common Pleas, Stark County, Ohio, is hereby affirmed.

By: Wise, J.

Farmer, P. J., and

Delaney, J., concur.

_____

_____

_____

JUDGES

JWW/d 0706

IN THE COURT OF APPEALS FOR STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT


STATE OF OHIO                          :
                                       :
    Plaintiff-Appellee             :
                                       :
-vs-                                   :          JUDGMENT ENTRY
                                       :
ROBERT GODFREY GRIER                   :
                                       :
    Defendant-Appellant            :          Case No. 2010 CA 00246


For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas of Stark County, Ohio, is affirmed.

Costs assessed to appellant.


_____

_____

_____

                  JUDGES